UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARTIN MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-417 |
| | § | |
| CITY OF WESLACO TEXAS, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is the self-styled "Rule 12 Motion to Dismiss or Alternatively, Rule 12(E) Motion for More Definite Statement and Motion for a Rule 7 and Rule 8 Reply"[1] ("Motion to Dismiss") filed by Defendant City of Weslaco ("City"). Plaintiff Martin Martinez ("Martinez") has not filed a response. Upon the Court's consideration of the motion, pleadings, and relevant authorities, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

On November 8, 2012, the Court severed the case in which this action was originally brought, and simultaneously ordered Plaintiff to re-plead his claims as to this specific case.[2] On November 14, 2012, in compliance with the Court's order, Martinez filed his second amended complaint,[3] in which the essence of Martinez' factual allegations are as follows. Prior to January 15, 2011, Martinez was an employee of City and was "primarily assigned" to work at City Hall, performing a variety of functions.[4] On or about January 15, 2011, Martinez was reassigned to

---

[1] Dkt. No. 6 ("Motion to Dismiss").
[2] Dkt. No. 1.
[3] Dkt. No. 2 ("Amended Complaint"). Although Martinez has titled this filing as his "Second Amended Complaint," that title gives the erroneous impression that he has previously amended his complaint.
[4] *See* Amended Complaint at ¶¶ 4-6.

1 / 20

work at Gibson Park, where he suffered a work-related, leg injury on or about February 8, 2011.[5] At that point, City initiated a workers' compensation claim and placed Martinez on FMLA leave after three days.[6] Thereafter, in June of 2011, Martinez alleges that he was terminated "for the reason that he exhausted his FMLA leave."[7]

On November 28, 2012, City filed its answer to the amended claim and, on December 3, 2012, filed the instant motion to dismiss.[8] In the motion to dismiss, City seeks dismissal of the complaint under Rule 12 or, alternatively, for a more definite statement of Martinez' claims.

## II. Legal Standard

After a party has answered a complaint, the proper mechanism for removing a claim from the Court's consideration is a judgment on the pleadings under Federal Rule of Civil Procedure 12(c), as opposed to a motion to dismiss under Rule 12(b)(6).[9] City answered Martinez' complaint on November 28, 2012.[10] As a result, although City brings this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court will treat the motion as a Rule-12(c) motion for judgment on the pleadings. This does not change the substantive analysis, however, since the Court analyzes Rule-12(c) motions for judgment on the pleadings by the same standard as Rule-12(b)(6) motions to dismiss.[11]

---

[5] *See* Amended Complaint at ¶¶ 6 & 8.
[6] *See id.* at ¶ 9.
[7] *Id.*
[8] *See* Dkt. No. 4 (Answer).
[9] FED. R. CIV. P. 12(c) ("Motion for Judgment on the Pleadings. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").
[10] Dkt. No. 4.
[11] *See* Doe v. MySpace, Inc., 528 F.3d 413, 419 (5th Cir. 2008) ("A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).") (citing Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004)) (internal citations omitted).

At the motion to dismiss stage, the Court limits its inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."[12] "To survive a 12(b) motion to dismiss the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[13]  This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[14]  The Court regards all such well-pleaded facts as true and views them in the light most favorable to the plaintiff.[15] Considered in that manner, factual allegations must raise a right of relief above the speculative level.[16]

Procedurally, the Court proceeds by first disregarding from its analysis any conclusory allegations as not entitled to the assumption of truth, consistent with Supreme Court precedent in *Ashcroft v. Iqbal*.[17]  The Court then undertakes the "context-specific" task of determining whether well-pleaded allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[18]

### III. DISCUSSION

#### A.  Initial Matters

Before conducting its analysis, the Court qualifies that analysis with regard to Martinez' lack of response to the motion. Local Rule 7.3 provides that "[o]pposed motions will be submitted to the judge 21 days from filing without notice from the clerk and without appearance

---

[12] Wilson v. Birnberg, 667 F.3d 591, 600 (5th Cir. 2012) (quoting Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017 (5th Cir. 1996)) (internal quotations omitted).

[13] In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), *cert. denied*, 552 U.S. 1182 (2008)).

[14] *Twombly*, 550 U.S. at 555.

[15] *Id*.

[16] *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555).

[17] Ashcroft v. Iqbal, 556 U.S. 662 (2009).

[18] *See id*. at 680.

by counsel."[19] In turn, Local Rule 7.4 provides, "[f]ailure to respond will be taken as a representation of no opposition."[20] Over 21 days have elapsed since the motion to dismiss was filed, Martinez has not responded and, as a result, the Court will consider the motion as though it is unopposed.

### B. City's Dismissal Basis

In the motion to dismiss, City challenges the sufficiency of Martinez' amended complaint, asserting broadly that "Plaintiff has pled in such a way as to make it guess as to the precise causes of action."[21] In expounding upon this basic idea, City describes how the amended complaint does not meet City's expectations,[22] and how City is thereby "left trying to piece together a puzzle by Plaintiff regarding the precise causes of action."[23] In fairness, the Court recognizes that the amended complaint is an example of shoddy draftsmanship, featuring poor organization, irrelevant facts, and a lack of editorial discernment.

However, City is similarly deficient in leveling that broad criticism. Other than in a general, preliminary, and non-specific section on the 12(b)(6) standard, City cites to *absolutely no authority* for the pleading requirements it asserts that Martinez has failed to satisfy. Apparently without recognizing the irony, City tries to justify its entitlement to dismissal relief by vaguely asserting that Martinez has asserted his entitlement to relief too vaguely. It is, however, unlikely that City would have found supporting authority for its position, even had it attempted to do so, because Federal Rule of Civil Procedure 8 only requires Martinez to state a

---

[19] LR7.3.
[20] LR7.4.
[21] Motion to Dismiss at p. 2.
[22] *Id*. (stating that ". . . it is in this Section that Defendant would expect to see the specific causes of action that Plaintiff sues under . . . .").
[23] *Id*. at p. 2.

claim, not "precise causes of action."[24] Therefore, it is unavailing to seek dismissal of claims due to a complaint's failure to meet City's expectations of express specificity.

This is not to say that the complaint prevents more substantive dismissal considerations, as the Court demonstrates below. Certainly, although such consideration would require counsel for City to engage in the arduous task of matching factual allegations with poorly-pled claims, it is not an objection justifying dismissal, no matter how objectionable counsel may find the task.

In sum, the motion to dismiss does not itself provide a basis for dismissal and, were the Court to consider dismissal solely on the basis put forth by City, the Court would deny the requested relief.

_Alternative Relief in Motion to Dismiss._ Although the motion to dismiss requests alternative relief in the form of a more definite statement and reply, the Court's prior order and Martinez' lack of response have squarely foreclosed that possibility. The Court's previous order states:

> The Court warns [Martinez] that by permitting [him] to amend [his] complaint[] it is giving [him a] second chance[]. If [Martinez'] amended complaint fails to state a claim under the Federal Rules of Civil Procedure, the Court is unlikely to give [Martinez] another chance to amend and **will likely dismiss that amended complaint with prejudice to re-filing**.[25]

As noted above, Martinez availed himself of the opportunity by subsequently filing his amended complaint, his second attempt at properly pleading his claim. Additionally, Martinez has not filed a response to the motion to dismiss, nor otherwise requested leave to amend, and

---

[24] _See_ FED. R. CIV. P. 8(a) (requiring only "a short and plain statement of the _claim_ showing that the pleader is entitled to relief.") (emphasis added).
[25] Dkt. No. 1 at p. 4 (emphasis in original).

therefore has provided the Court with no basis to even consider granting leave for further amendment, which was already unlikely.[26]

The Fifth Circuit has explained that, after an initial opportunity to remedy deficient pleadings, "plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold."[27] Furthermore, the Fifth Circuit has found dismissal with prejudice appropriate in two circumstances which are present before the Court: (1) where a plaintiff has had ample opportunity to amend his complaint, an opportunity afforded to Martinez;[28] and (2) where the court finds, as the Court does here, that plaintiff has alleged his or her best case.[29] As a result of those considerations, if the amended complaint is deficient under Rule 12(b)-standards, the Court will simply dismiss those deficient claims with prejudice, consistent with its prior order.

### C.  *Sua Sponte* Dismissal Consideration.

City has failed in its attempt to support a viable basis for dismissal, and Martinez' lack of participation recommends against allowing further amendment; this leaves the Court to wade through the Serbonian bog of Martinez' complaint without professional contribution from either party. The Court begins its analysis with a passage from the complaint that mentions numerous statutes.[30] The pertinent portion provides:

---

[26] The Court's position is further justified by the unusually-extensive instruction that the Court provided in the paragraph following the above-cited warning: "The Court urges Plaintiffs' counsel to carefully review the federal pleading standard as explained in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2009), and to pay heed to the procedural requirements of Rule 10 of the Federal Rules of Civil Procedure." *Id.*

[27] Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). *See also* Dark v. Potter, 293 F. App'x 254, 257 (5th Cir. 2008).

[28] *See* Rodriguez v. United States, 66 F.3d 95, 98 (5th Cir. 1995) (citing George v. King, 837 F.2d 705, 708 n.2 (5th Cir. 1988)).

[29] *See* Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999) (citing *Jacquez*, 801 F.2d at 792).

[30] Motion to Dismiss at p. 2.

> The Defendant, as an employer, is covered by and as a municipality is not immune to suit for violations of any of the following statutes prohibiting discrimination: the Family Medical Leave Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the American with Disabilities Act as Amended.[31]

The passage includes footnotes for each statutory reference, but these footnotes only consist of a statutory citation and a general, nonspecific description of the statutory provision. Additionally, the Court recognizes that some of the footnotes only describe the referenced statute's prohibition on discrimination, and omit any reference to retaliation. Nevertheless, consistent with the obligation to make reasonable inferences in favor of the plaintiff at this stage of the proceedings, the Court will address potential claims of retaliation because, in the employment discrimination context, retaliation under pertinent statutes are often conceptualized as another form of discrimination.[32] The above passage, however, is insufficient to state a claim under those statutes, even including the footnotes, due to the lack of any factual allegations.

As such, the Court now proceeds sequentially through the potential claims under each of the referenced statutes, and evaluates the allegational sufficiency relative to each claim. Martinez does not make any allegations of direct discrimination, and the Court thus applies the framework set forth in *McDonnell Douglas Corp. v. Green*,[33] which is generally applicable to employment discrimination and retaliation claims based on circumstantial evidence of discrimination, including claims under the FMLA,[34] ADEA,[35] ADA,[36] and Title VII.[37]

---

[31] Amended Complaint at ¶ 3.

[32] *See e.g.*, Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 259 (5th Cir. 2001) (describing retaliation claims as "nothing more than a protection against discrimination in that the employee against whom the employer has retaliated suffers discrimination based on the employee's exercise of a right to charge, testify, assist, or participate in a protected activity under the ADEA.").

[33] *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

[34] Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 768 (5th Cir. 2001) (FMLA-retaliation claim)

[35] Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999) (ADEA claim) *partially abrogated on other grounds by* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-49 (2000).

[36] McInnis v. Alamo Community College Dist., 207 F.3d 276, 279 (5th Cir. 2000) ("This being a case brought under the Americans with Disabilities Act where only circumstantial evidence is offered to show the alleged unlawful

The Court recognizes that "the *McDonnell Douglas* framework is an evidentiary standard, not a rigid pleading requirement."[38] However, the Fifth Circuit in *Puente v. Ridge* clarified that *McDonnell Douglas* provides a viable rubric for evaluating pleading sufficiency at the motion to dismiss stage, consistent with the principle that "no plaintiff is exempt from [his] obligation to allege facts sufficient to state all the elements of [his] claim."[39] The Court, in turns, defines factual sufficiency according to the *Twombly* plausibility standard discussed above.[40]

In its typical role as an evidentiary standard, the *McDonnell Douglas* analysis first requires the plaintiff to make out a *prima facie* case of discrimination, and thereafter shifts the burden to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.[41] However, at the motion to dismiss stage, the Court only evaluates whether plaintiff's allegations satisfy the initial burden, i.e. whether reasonable inferences based on Martinez' factual allegations, taken as true, "state a claim to relief that is plausible on its face."[42]

### a.  Potential claims under the FMLA

The Court now turns its analysis to any claims under the Family Medical Leave Act ("FMLA"), the statute cited most often in Martinez' complaint.[43] As explained below, Martinez

---

discrimination, we apply the McDonnell Douglas, Title VII burden-shifting analysis.") (citing Daigle v. Liberty Life Ins. Co., 70 F.3d 294, 396 (5th Cir. 1995)).

[37] Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)) (Title VII claim).

[38] Puente v. Ridge, 324 F. App'x 423, 427 (5th Cir. 2009) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506-07 (2002)).

[39] *Puente*, 324 F. App'x 423, 427-28 (5th Cir. 2009) (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 370 (5th Cir. 2008)) (internal quotations omitted). Additionally, the Court notes that its approach addresses the Fifth Circuit's recently-expressed caution regarding the application of the *McDonnell Douglas* standard in the motion to dismiss context. In its recent decision, *Raj v. Louisiana State University*, the Fifth Circuit wrote, "as the district court required [the plaintiff] to make a showing of each prong of the prima facie test for disparate treatment at the pleading stage, the district court erred by improperly substituting an 'evidentiary standard' for a 'pleading requirement.'" *Raj v. Louisiana State Univ.*, —— F.3d. ——, 2013 WL 1703990, *5 (5th Cir. 2013).

[40] *See* II, *supra*.

[41] *See Wallace*, 271 F.3d at 219.

[42] *See* fn. 13, *supra*.

[43] 29 U.S.C. § 2601 *et seq*.

8 / 20

does not state any claim under the FMLA, whether considered as a claim for interference, retaliation, or discrimination. The FMLA includes prescriptive provisions entitling employees to certain substantive rights, among which the following are implicated in this case: (1) the right to unpaid leave for a period of up to 12 workweeks where an employee has "a serious health condition that makes [him or her] unable to perform the functions of [his or her] position[];"[44] and (2) an employee's right to return, after a qualified absence, to the same position, or an equivalent position.[45] Additionally, the FMLA contains proscriptive provisions which protect employees from both interference with exercising the aforementioned rights, as well as retaliation or discrimination based on exercising their FMLA rights.[46] Specifically, employers are prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under [the FMLA]."[47] Moreover, employers may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.[48]

Interference Claim. First, the Court considers whether Martinez states a claim for interference with his FMLA rights. Interference, although not defined by the FMLA itself, is clarified by the Code of Federal Regulations, which provides that interference includes refusal to authorize FMLA leave, or restraining or otherwise discouraging the taking of leave.[49] In this

---

[44] 29 U.S.C. § 2612(a)(1)(D).
[45] Mauder v. Metro. Transit Auth., 446 F.3d 574, 580 (5th Cir. 2006) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999)); *see also* 29 C.F.R. §§ 825.214 (describing employee right to reinstatement to same position held when leave commenced, or to an equivalent position), 825.215 (describing equivalent position as "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites, and statute), & 825.220(c) (providing that "[t]he Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.").
[46] *Hunt*, 277 F.3d at 768-69.
[47] 29 U.S.C. § 2915(a)(1).
[48] 29 U.S.C. § 2615(a)(2).
[49] 29 C.F.R. § 825.220.

respect, Martinez' claim is unusual insofar as he affirmatively alleges that City provided him with leave,[50] and further alleges that his leave satisfied the statutorily-required duration.[51]

Martinez also fails to allege a claim of interference with his right to reinstatement. "If any employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires."[52] Further, the Fifth Circuit has clarified that where, as here, an employee never returned to work, the right to reinstatement can nevertheless be preserved if the employee attempts to exercise this right during the FMLA period.[53] In the context of the FMLA, the right to reinstatement applies to the "same position held when leave commenced, or to an equivalent position."[54] Under the Code of Federal Regulations, an "equivalent position" is required by to be "virtually identical" and "involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."[55]

Martinez never directly states that he attempted to return to the position at which he was injured, but does allege that he expressed his desire to work in his prior City Hall position.[56] However, even construing this as an attempt to return to work, it is not an attempt to exercise his reinstatement right, such that the right would be preserved despite his not returning to work. By his own allegations, Martinez was injured while assigned to Gibson Park, but only sought to return to work in his prior position at City Hall, which is problematic for two reasons. First, the

---

[50] Amended Complaint at ¶ 9 (alleging that, on or about February 8, 2011, City "took the steps of initiating a workers' compensation claim, and placing the Plaintiff on FMLA leave . . . .").

[51] *Id.* at ¶¶ 8 & 9. Martinez describes his injury on February 11, 2011, his placement on FMLA leave "after three days" on or about February 14, 2011, and his final termination in June of 2011; this timeframe indicates both that he was placed on FMLA leave, and that the leave was for the statutorily-required, twelve-week period of time.

[52] *Hunt*, 277 at 763-64.

[53] *See id.* at 764.

[54] 29 C.F.R. § 825.214.

[55] 29 C.F.R. § 825.215.

[56] *See* Amended Complaint at ¶ 2 ("In these [biweekly] meetings [with personnel in the Human Resources department] the Plaintiff emphatically expressed interest in the light duty assignments at various locations *similar to his nine years of work before he was transferred to the Parks Department*.") (emphasis added).

amended complaint contains numerous allegations which distinguish the two positions, and which prevent any inference that the City Hall position is an "equivalent position" under the statute. Second, Martinez never directly or indirectly alleges his ability to perform in the Gibson Park position. Indeed, Martinez' entitlement to FMLA leave was based on his inability to "perform the functions of his position."[57] If Martinez was "unable to perform an essential function of the position" at the end of his FMLA leave period, he has "no right to restoration to another position under the FMLA."[58] Moreover, this principle undercuts any support of an FMLA-interference claim from the repeated references to Martinez' medical clearance for, and expressed interest in, "light duty" assignments. As the Code of Federal Regulations makes clear, the FMLA right-to-reinstatement does not encompass "light duty" positions; instead, the FMLA only entitles employees to reinstatement to the "same position" or an "equivalent position."[59] As a result, Martinez' allegations do not support any claim that City interfered with his right to reinstatement.

<u>Retaliation or Discrimination Claim.</u> Since the amended complaint fails to support an FMLA-interference claim, any FMLA claim related to Martinez' termination must survive through his statement of an FMLA-retaliation or -discrimination claim. These claims require Martinez to allege that: (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that he was treated less favorably than an employee who had not requested leave under the FMLA or (3b) the adverse decision was made because [he] sought protection under the FMLA.[60] However, any claim by Martinez fails because he has not alleged facts sufficient to satisfy either of the final elements. Martinez makes no allegations

---

[57] *See* fn. 44, *supra*.
[58] 29 C.F.R. § 825.216.
[59] *See* fns. 54 & 55, *supra*.
[60] *See Mauder*, 446 F.3d  at 583 (citing *Hunt*, 277 F.3d  at 768 (5th Cir. 2001)).

regarding other employees who had requested FMLA leave. Martinez' allegations about the treatment of another employee fails to provide any inferential basis for whether and how that employee asserted his FMLA rights, and thus no basis for satisfying the treated-less-favorably element. Martinez additionally fails to allege facts which support his termination due to his taking FMLA leave. On the contrary, Martinez alleges that he was terminated "for the reason that he exhausted his FMLA leave."[61] As previously discussed, the FMLA relieves employers of the duty to reinstate an employee who does not return to the same or an equivalent position, or at least seek to do so, by the end of the FMLA leave period. Therefore, this is not a factual basis to reasonably infer his termination for taking leave, and Martinez has provided no alternative basis upon which the Court can rely.

As a result of the above considerations, the Court finds that Martinez has failed to state any claim under the FMLA, and finds that any such claims should be **DISMISSED**.

### b.  Potential claims under Title VII and the ADEA.

The Court now addresses any potential claims under Title VII of the Civil Rights Act of 1964 ("Title VII"),[62] or the Age Discrimination in Employment Act of 1967 ("ADEA").[63] The Court concurrently considers claims under these statutes due to the similarity of the statutes and because, other than the above-cited statutory enumeration, any claims under these statutes are jointly implicated by the following prepositional maze:

> The Plaintiff realleges Paragraphs 1-14 and alleges further that to the extent his esteem and rights relative to the efforts to retain employment of other long term employees were discounted because of stereotypes about his age, over 40, and national origin, Hispanic, contributing to his treatment and termination, alone or in combination with his FMLA status and physical disability, the Plaintiff has

---

[61] *See* Amended Complaint at ¶ 9.
[62] 42 U.S.C. § 2000e *et seq*.
[63] 29 U.S.C. § 621 *et seq*.

exhausted his administrative remedies necessary to recover for such discrimination prior to filing suit.[64]

<u>Discrimination Claims.</u> Title VII and the ADEA prohibit employer discrimination with respect to an employee's compensation, terms, conditions, or privileges of employment, respectively, on the basis of "[his] race, color, religion, sex, or national origin"[65] or "[his] age."[66]

Construing the language as Title-VII and ADEA discrimination claims requires Martinez to satisfy similar allegational requirements. A Title-VII discrimination claim requires Martinez to allege (1) he is a member of a group protected by the statute, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected group.[67] Similarly, the *prima facie* case for an ADEA age-discrimination claim requires Martinez to allege that "(1) he was discharged; (2) he was qualified for his position; (3) he was within the protected class [over age 40]; and (4) he was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of his age."[68]

Discrimination claims under either statute cannot survive the motion to dismiss because, at a minimum, Martinez fails to sufficiently allege the fourth element as to both Title VII and the ADEA. First, in pleading a Title-VII claim, Martinez confuses the two protected groups of national origin and race, describing his national origin as "Hispanic."[69] Therefore, as an initial qualification, the Court limits its analysis to racial discrimination, since Martinez fails to factually specify his national origin. Even considering a claim of racial discrimination, Martinez fails to include allegations that he was "treated less favorably than other similarly situated

---

[64] Amended Complaint at ¶ 15.
[65] 42 U.S.C. § 2000e-2(a).
[66] 29 U.S.C. § 623(a)(1); *see also* Rachid v. Jack In The Box, Inc., 376 F.3d 305, 308-09 (5th Cir. 2004).
[67] *See* McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).
[68] West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 (5th Cir. 2003) (quotation marks and internal citations omitted).
[69] *See* fn. 64, *supra*.

employees outside the protected group." Toward this end, Martinez' complaint includes factual allegations against unnamed *non*-employees[70] and Ramon Arispe, an individual whose employment status is unspecified.[71] These allegations are insufficient, in the first instance, because they do not implicate employees. Second, the amended complaint makes no allegation about whether any individual was similarly-situated or outside the protected group. Finally, even though the complaint at least names one other individual, the Court cannot reasonably infer, based on an allegation which only describes Mr. Arispe with an apparently-Hispanic surname, that he is an employee outside the protected class to which Mr. Ramirez himself belongs.

Martinez' ADEA claim is even more glaringly deficient. The amended complaint makes no reference to his replacement by someone outside the protected class or younger, or to his discharge due to his age. Indeed, beyond specifying his own age, Martinez' complaint makes no reference to the age of any other individual. Although Martinez broadly asserts the possibility of his discharge due to age, a complaint is insufficient if it only draws a conclusory connection between the protected status and the alleged discrimination, and this is true even at the motion to dismiss stage. To wit, the Fifth Circuit has held that similar language was "merely a legal conclusion" that was insufficient to raise a right to relief above the speculative level.[72] Therefore, any discrimination claims under Title VII and the ADEA do not survive the motion and should be **DISMISSED**.

Retaliation claims. In addition to protecting against discrimination, Title VII and the ADEA protect employees from retaliation for engaging in a protected activity under those

---

[70] *See* Amended Complaint at ¶ 12 ("The Plaintiff is well aware from his prior experience that so many light duty jobs abound that non-employees are routinely given the opportunity to work at City Hall and other locations, as has been alleged in Paragraph 5.").

[71] *See id*. ("Additionally, the plaintiff alleges that Ramon Arispe, among others, was previously given light duty assignments at City Hall.").

[72] Landavazo v. Toro Co., 301 F. App'x 333, 336 (5th Cir. 2008) (considering allegation that "[t]he real reasons Mr. Landavazo was discriminated and retaliated against in the terms, conditions and privileges of his employment is because of his race, color, national origin and or ethnicity and or in violation of the Fair Labor Standards Act.").

statutes.[73] To maintain a Title-VII retaliation claim, Martinez must allege facts to satisfy the following elements: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.[74] An ADEA retaliation claim requires allegations fulfilling the same elements as to that statute, but additionally requires Martinez to allege he is qualified for the job in question.[75] Under both statutes, a protected activity is defined as "opposition to any practice rendered unlawful by [Title VII or the ADEA], including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under [Title VII or the ADEA].[76] These claims fail for the simple reason that Martinez has not alleged that he participated in a protected activity under either statute.

Martinez has failed to allege facts which support a viable claim under Title VII and the ADEA. The Court, therefore, finds that any claims which Martinez purports to make under those statutes should be **DISMISSED**.

### c. Potential claims under the ADA.

The Court now turns its consideration to the last statute asserted by Martinez, the Americans with Disabilities Act ("ADA"),[77] as Amended by the ADA Amendments Act of 2008 ("ADAAA").[78] Title I of ADA governs claims within the employer-employee relationship and that relationship is the sole factual basis on which Martinez' complaint might sustain a claim. Specifically, Title I provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

---

[73] See *McCoy*, 492 F.3d at 556-57(Title VII); *see also Holtzclaw*, 255 F.3d at 260 (ADEA).
[74] See *McCoy*, 492 F.3d at 556.
[75] See *Holtzclaw*, 255 F.3d at 260.
[76] See 42 U.S.C. §2000e-3(a) (Title VII) *and* 29 U.S.C. § 623(d) (ADEA).
[77] 42 U.S.C. § 12101 *et seq*.
[78] ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553.

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[79] The statute provides that employers are "covered entities,"[80] and Martinez sufficiently alleges that City is an employer to which the prohibition applies.[81]

In order to maintain an ADA discrimination claim, Martinez must satisfy the following elements: (1) he has a disability; (2) he is a qualified individual for the job in question; and (3) an adverse employment decision was made because of his disability.[82] In applying these elements, the Court notes that the ADAAA applies since the alleged disability and the events complained of all occurred after the ADAAA's effective date of January 1, 2009.[83] This consideration is important since the ADAAA has broadened the coverage to which the ADA's protections apply, an express response to court decisions which "created an inappropriately high level of limitation necessary to obtain coverage under the ADA."[84] Accordingly, the Court incorporates the ADAAA's purpose of reinstating the "broad scope of protection under the ADA," and the attendant expansion of disability "in favor of expansive coverage to the maximum extent permitted by the terms of the ADA."[85] However, even in light of the statute's recent amendments, claims under the ADA still require a plaintiff to plead facts within "the terms of the ADA," and Martinez has failed to do so in every respect.

---

[79] 42 U.S.C. § 12112.
[80] *See* 42 U.S.C. § 12111(2) (providing that "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee.").
[81] *See* 42 U.S.C. 12111(5) (defining "Employer").
[82] *See* Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999).
[83] ADAAA, Pub. L. No. 110-325, § 8.
[84] *Id*. § 2(b)(5).
[85] 29 C.F.R. § 1630.1(c)(4).

### i.  Allegation of Disability

The Court begins with the threshold inquiry of whether Martinez has sufficiently alleged his disability.[86] The ADAAA maintained the pre-amendment categorical approach to allegations of disability, expanding upon the three categories of disability: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual ("actual-impairment"); (2) a record of such an impairment ("record-of-impairment"); or (3) being regarded as having such an impairment ("regarded-as-impaired").[87] Relative to the pre-amendment version of the ADA, the ADAAA prohibited strict construction of "substantially limits,"[88] and expanded the scope of impairments to which the ADA applies by broadening the definition of "major life activities."[89] Under this rubric, Martinez wholly fails to allege a disability under the actual-impairment or record-of-impairment categories, and fails to allege the type of impairment which would sustain a claim under the regarded-as-impaired category.

Actual-Impairment or Record-of-Impairment.  In contrast to his express regarded-as-impaired allegation discussed below, Martinez' allegations never directly assert his disability due to an actual impairment or a record thereof. Moreover, Martinez' complaint prevents the Court from reasonably inferring these disability categories, even under the ADAAA-expanded scope of ADA impairment. This is because Martinez repeatedly describes his ability to perform the activities required for numerous positions within City and, at least with regard to the City Hall position, defines the required activities to encompass a wide variety of duties, requirements, and responsibilities. In short, Martinez repeatedly alleges his ability, not his disability.

---

[86] *See* Talk v. Delta Airlines, Inc., 165 F.3d at 1024 (citing Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996)).
[87] 42 U.S.C. § 12102(1).
[88] *See* ADAAA at § 2(b)(5).
[89] *See id*. at § 4(a).

Regarded-as-Impaired. The Court now turns its analysis to Martinez' allegation that he was disabled as a result of "being regarded as having [an impairment that substantially limits a major life activity]."[90] Unlike the above-discussed allegations of disability, Martinez directly alleges in his amended complaint that he was regarded by City as being disabled due to his knee injury.[91] However, that conclusory allegation is insufficient to independently sustain the claim, and Martinez' allegations do not describe a disability of sufficient duration to support a regarded-as-impaired disability status.

The ADA states that the regarded-as-impaired provision "shall not apply to impairments that are transitory and minor," defining those impairments as having an actual or expected duration of 6 months or less.[92] Martinez does not directly allege the necessary durational threshold, and his related allegations do not permit a reasonable inference thereof. To wit, Martinez alleges that, in March of 2011, he was medically authorized to return to "light duty" work, and that he anticipated medical authorization to work "with even fewer restrictions at a [date after March 2011], *well before* the expiration of his FMLA leave."[93] Given this allegation that Martinez was experiencing significant recovery within one to two months of the early-February injury, with even greater capability "well before" the end of his three-month, FMLA-leave period, the Court cannot reasonably infer that the impairment had an actual or expected duration of more than six months. As a result, Martinez does not allege a disability which satisfies the regarded-as-impaired prong.

Because Martinez has therefore not adequately alleged a disability under any of the categories recognized by the ADA, any claim under the ADA fails for this reason alone.

---

[90] 42 U.S.C. § 12102(1)(C).
[91] *See* Amended Complaint at ¶ 14 ("The [P]laintiff . . . alleges further that he was regarded as having a disability by reason of his serious injury . . . .").
[92] 42 U.S.C. § 12102(3)(B).
[93] Amended Complaint at ¶ 10 (emphasis added).

However, the Court proceeds to describe the allegational insufficiency as to the remaining elements.

### ii.   Allegation of "Qualified Individual"

Next, the Court considers the factual allegations supporting the second element, that Martinez was a "qualified individual," a term defined by the ADA as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[94] As an initial point, the Court repeats that Martinez has never alleged that he was qualified to perform his position at Gibson Park without reasonable accommodation. Therefore, the only way for Martinez to satisfy the allegational requirement that he was a "qualified individual" is to allege facts supporting his ability to perform the essential functions of that position with reasonable accommodation.

In this regard, though Martinez alleges his capacity to work if provided with reasonable accommodation, those allegations reveal a basic misunderstanding of the concept of "reasonable accommodation" and, relying on that faulty foundation, fail to support his claim.[95] On a broad level, instead of alleging his ability to perform the Gibson-Park position with reasonable accommodation, Martinez alleges his ability to perform *another* position *as* reasonable accommodation. Specifically, the amended complaint only defines "reasonable accommodation" through Martinez' allegations that he could have performed "light duty" assignments, and defines those assignments as "similar to his nine years of work [at the City Hall position] before he was transferred to the [Gibson Park position]."[96] Although the ADA provides that "reasonable accommodations" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with

---

[94] 42 U.S.C. § 12111(8).
[95] *See* Amended Complaint at ¶ 11.
[96] *Id*. at ¶¶ 10 & 11.

19 / 20

disabilities,"[97] Martinez' concept of "reasonable accommodation" goes well beyond the ADA definition of that concept, and even beyond the definition of "qualified individual." As a result, Martinez has failed to allege that he was a qualified individual under the ADA, and his claim fails on this basis.

### iii. Allegation of Termination Due to Disability

Finally, Martinez does not allege facts sufficient to support the third element, that the adverse employment decision of his termination was motivated by his disability. First, this claim fails because Martinez did not state the condition precedent of suffering a disability. Second, the only directly asserted basis for his termination was "for the reason that he exhausted his FMLA leave."[98] In sum, the Court finds that Martinez has failed to state any of the required *prima facie* elements for a claim under the ADA. Therefore, because such failure is fatal to his statement of a claim, the Court **DISMISSES** any putative claim under the ADA.

### IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Court **GRANTS** the motion as to Martinez' FMLA, Title VII, ADEA and ADA claims; accordingly the Court **DISMISSES** those claims with prejudice. However, the Court **DENIES AS MOOT** City's request for a more definite statement. All claims having been dismissed, the Court will issue a separate final judgment.

IT IS SO ORDERED.

DONE this 14th day of June, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[97] 42 U.S.C. § 12111(9).
[98] Amended Complaint at ¶ 9.